## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| WILLIAM FRIEDMAN, On Behalf of Himself and All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) ) | Case No. _____ |
| v. ) ) | JURY TRIAL DEMANDED |
| HATTERAS FINANCIAL CORP., DAVID W. BERSON, BENJAMIN M. HOUGH, MICHAEL R. HOUGH, IRA G. KAWALLER, VICKI MCELREATH, JEFFREY D. MILLER, WILLIAM V. NUTT, JR., THOMAS D. WREN, ANNALY CAPITAL MANAGEMENT, INC., and RIDGEBACK MERGER SUB CORPORATION, ) ) ) ) ) ) ) ) ) ) | CLASS ACTION |
| Defendants. ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff William Friedman ("Plaintiff"), by his undersigned attorneys, for this complaint against Defendants (defined below), alleges upon personal knowledge with respect to himself and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.  Plaintiff brings this action in connection with a proposed transaction announced on April 11, 2016 (the "Proposed Transaction") pursuant to which Hatteras Financial Corp. ("Hatteras" or the "Company") will be acquired by Annaly Capital Management, Inc. ("Annaly"), through its wholly-owned subsidiary, Ridgeback Merger Sub Corporation ("Merger Sub").

2. On April 10, 2016, Hatteras's Board of Directors (the "Board" or the "Individual Defendants," and together with Hatteras, Annaly, and Merger Sub, "Defendants") caused Hatteras to enter into an agreement and plan of merger (the "Merger Agreement") with Annaly and Merger Sub, pursuant to which stockholders of Hatteras may elect to receive one of the three following options: (a) $5.55 in cash and 0.9894 shares of Annaly common stock; (b) $15.85 in cash; or (c) 1.5226 shares of Annaly common stock. According to *Yahoo! Finance*, at least one analyst has set a price target for Hatteras of $20.00 per share.

3. On May 5, 2016, Defendants issued materially incomplete disclosures in the Solicitation/Recommendation Statement (the "Solicitation Statement") filed with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction. The Solicitation Statement is deficient and misleading in that it fails to provide adequate disclosure of all material information related to the Proposed Transaction.

4. Accordingly, Plaintiff alleges herein that Defendants violated Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(e), 14(d), and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over Defendants because each Defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**PARTIES**

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Hatteras common stock.

9.      Defendant Hatteras is a Maryland corporation and maintains its principal executive offices at 751 W. Fourth Street, Suite 400, Winston Salem, NC 27101. Hatteras's common stock is traded on the NYSE under the ticker symbol "HTS."

10.     Defendant David W. Berson ("Berson") has served as a director of Hatteras since 2007. According to the Company's annual proxy statement filed with the SEC on March 25, 2016 (the "Annual Proxy"), Berson is Chair of the Finance Committee and a member of the Audit Committee and the Compensation and Governance Committee.

11.     Defendant Benjamin M. Hough ("B. Hough") has served as a director of Hatteras since 2007. According to the Company's Annual Proxy, B. Hough is President and Chief Operating Officer ("COO") of the Company. B. Hough is co-founder, President, COO, and a director of Atlantic Capital Advisors LLC (the "External Manager"), which, as discussed below, manages the Company's business affairs. B. Hough also is co-founder, President, COO, and a director of ACM Financial Trust, Inc. ("ACM"), a private mortgage REIT managed by the External Manager. B. Hough is M. Hough's (defined below) brother.

12.     Defendant Michael R. Hough ("M. Hough") has served as a director of Hatteras since 2007. According to the Company's Annual Proxy, M. Hough is Chairman of the Board and Chief Executive Officer ("CEO") of the Company. M. Hough is co-founder, CEO, and a director of the External Manager. M. Hough also is co-founder, CEO, and a director of ACM.

3

M. Hough is B. Hough's brother.

13. Defendant Ira G. Kawaller ("Kawaller") has served as a director of Hatteras since 2007. According to the Company's Annual Proxy, Kawaller is a member of the Compensation and Governance Committee and the Finance Committee.

14. Defendant Vicki McElreath ("McElreath") has served as a director of Hatteras since 2014. According to the Company's Annual Proxy, McElreath is a member of the Audit Committee.

15. Defendant Jeffrey D. Miller ("Miller") has served as a director of Hatteras since 2007. According to the Company's Annual Proxy, Miller is Chair of the Compensation and Governance Committee and a member of the Audit Committee.

16. Defendant William V. Nutt, Jr. ("Nutt") has served as a director of Hatteras since 2015. According to the Company's Annual Proxy, Nutt is a member of the Compensation and Governance Committee and the Finance Committee.

17. Defendant Thomas D. Wren ("Wren") has served as a director of Hatteras since 2007. According to the Company's Annual Proxy, Wren is Chair of the Audit Committee and a member of the Finance Committee. Wren also serves as a director of ACM.

18. The Defendants identified in paragraphs 9 through 17 are collectively referred to herein as the "Individual Defendants."

19. Defendant Annaly is a Maryland corporation.

20. Defendant Merger Sub is a Maryland corporation, a wholly-owned subsidiary of Annaly, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Hatteras (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

22. This action is properly maintainable as a class action.

23. The Class is so numerous that joinder of all members is impracticable. As of March 25, 2016, there were approximately 94,529,206 shares of Hatteras common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24. Questions of law and fact are common to the Class, including, among others: (i) whether Defendants violated the 1934 Act; and (ii) whether Defendants will irreparably harm Plaintiff and the other members of the Class if Defendants' conduct complained of herein continues.

25. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the

adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

28. Hatteras is a real estate investment trust ("REIT") that was formed in 2007 to own and manage a portfolio of residential mortgage investments, primarily in residential mortgage securities, with a focus on those secured by adjustable-rate mortgage loans on single-family residences.

29. On February 23, 2012, Hatteras entered into a management agreement (the "Management Agreement") with the External Manager, pursuant to which the External Manager manages the Company's business affairs.

30. Hatteras's current executive officers serve as executive officers of – and own all of the equity interest in – the External Manager.

31. Specifically, Individual Defendant B. Hough is co-founder, President, COO, and a director of the External Manager. Individual Defendant M. Hough is co-founder, CEO, and a director of the External Manager. Kenneth A. Steele ("Steele"), Hatteras's Chief Financial Officer ("CFO"), Secretary, and Treasurer, is CFO, Secretary, and Treasurer of the External Manager. Frederick J. Boos, II ("Boos"), Hatteras's Executive Vice President ("EVP") and Chief Investment Officer ("CIO"), is EVP and CIO of the External Manager.

6

32. The External Manager also manages ACM, a private mortgage REIT. B. Hough is co-founder, President, COO, and a director of ACM; M. Hough is co-founder, CEO, and a director of ACM; Wren is a director of ACM; Steele is CFO, Secretary, and Treasurer of ACM; and Boos is EVP and CIO of ACM.

33. In August 2015, representatives of "Company A" approached Individual Defendant M. Hough regarding a potential merger.

34. On September 17, 2015, Hatteras and Company A executed a non-disclosure agreement. The Solicitation Statement fails to disclose whether the non-disclosure agreement with Company A contained standstill and/or "don't ask, don't waive" provisions.

35. On November 4, 2015, the Hatteras Board met and formed a special committee of purportedly independent directors (the "Special Committee") due to potential conflicts of interest on the part of Individual Defendants M. Hough and B. Hough. Specifically, according to the Solicitation Statement, the Board formed the Special Committee "[d]ue to potential conflicts of interest with (a) the Hatteras [E]xternal [M]anager as a result of the possible termination of the [M]anagement [A]greement in connection with any potential transaction, and (b) Messrs. Michael R. and Benjamin M. Hough as a result of their ownership interests in the Hatteras [E]xternal [M]anager[.]" The Special Committee was comprised of Individual Defendants McElreath and Miller, as well as conflicted Individual Defendant Wren, who is also a director of ACM, which is managed by the External Manager and which was co-founded and is currently run by Individual Defendants M. Hough and B. Hough.

36. Despite the formation of the Special Committee, Individual Defendants M. Hough and B. Hough subsequently attended and participated in Special Committee meetings, and M. Hough led the discussions with Company A regarding a potential transaction.

7

37. On January 5, 2016, the Special Committee determined to engage Goldman, Sachs & Co. ("Goldman Sachs") as its financial advisor.

38. On January 27, 2016, Kevin G. Keyes ("Keyes"), CEO and President of Annaly, called Individual Defendant M. Hough to arrange for an in-person meeting. They met on February 11, 2016 and discussed a potential merger of Hatteras and Annaly.

39. On February 16, 2016, Hatteras issued a press release wherein it reported its fourth quarter 2015 financial results. For the quarter ended December 31, 2015, the Company had comprehensive income (loss) available to common shareholders of $7.4 million, or $0.08 per weighted-average common share, compared to $(84.9) million, or $(0.88) per weighted-average common share, for the quarter ended September 30, 2015. For the quarter ended December 31, 2015, the Company had core earnings of $0.45 per weighted-average common share, unchanged from $0.45 per weighted-average common share during the quarter ended September 30, 2015. With respect to the results, Individual Defendant M. Hough commented: "While 2015 was a challenging year, the introduction of mortgage servicing rights and mortgage credit to our portfolio will enhance our ability to manage risk more comprehensively and to position the business going forward[.] Combined with share repurchases, we expect these new revenue sources to diversify our portfolio, lessen our exposure to interest rate and basis risk and create long-term shareholder value."

40. On February 26, 2016, Annaly and Hatteras entered into a non-disclosure agreement. The Solicitation Statement fails to disclose whether the non-disclosure agreement with Annaly contained standstill and/or don't ask, don't waive provisions.

41. On March 18, 2016, Annaly submitted a preliminary proposal to acquire Hatteras for $3.81 in cash and 1.09894 shares of Annaly common stock per Hatteras share.

42. From March 2016 until the signing of the Merger Agreement, Hatteras's and Annaly's representatives discussed the proposed termination of the Management Agreement and matters including the continued provision of services by the executive officers of the External Manager – i.e. Individual Defendants M. Hough and B. Hough, along with Steele and Boos – following the close of the transaction.

43. On April 4, 2016, the Special Committee engaged Goldman Sachs to act as its financial advisor, despite the fact that Goldman Sachs has provided financial advisory and underwriting services to Annaly and its affiliates.

44. On April 7, 2016, Annaly submitted its "best and final offer" for $15.85 per share, with 40% of the total consideration in the form of cash and 60% of the total consideration in the form of Annaly common stock, and Annaly would enter into post-closing consulting arrangements with Hatteras's executive officers.

45. The Special Committee met later that day and determined that it "could support the revised proposal subject to the percentage of stock consideration being increased to 65%." Annaly agreed, and on April 10, the Board approved the Proposed Transaction.

46. The parties executed the Merger Agreement on April 10, 2016.

47. The Merger Agreement contains a "no solicitation" provision that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals. Section 6.3(a) of the Merger Agreement states:

> (a) From and after the date of this Agreement until the earlier of the Acceptance Time or the date, if any, on which this Agreement is validly terminated pursuant to Section 9.1, the Company agrees that it (including the Company Board of Directors) shall not, and shall cause each Company Subsidiary and Representative not to, directly or indirectly: (i) solicit, initiate or encourage or facilitate (including by way of providing non-public information) any inquiry, proposal or

9

offer, or the making, submission or announcement of any inquiry, proposal or offer which constitutes or would be reasonably expected to lead to an Acquisition Proposal, (ii) participate in any negotiations regarding, or furnish to any Person any non-public information relating to the Company or any Company Subsidiary in connection with, an actual or potential Acquisition Proposal, (iii) approve or recommend, or propose publicly to approve or recommend, any Acquisition Proposal, (iv) withdraw, change, amend, modify or qualify, or otherwise propose publicly to withdraw, change, amend, modify or qualify, in a manner adverse to Parent, the Company Board Recommendation, (v) if an Acquisition Proposal that is an exchange or tender offer has been commenced, fail to publicly recommend against any such Acquisition Proposal within ten (10) business days of being requested to do so by Parent, (vi) if an Acquisition Proposal has been publicly disclosed, fail to reaffirm the Company Board Recommendation within ten (10) business days of being requested to do so by Parent, (vii) enter into any merger agreement, acquisition agreement, reorganization agreement, letter of intent or similar agreement or document relating to, or any other agreement or commitment providing for, any Acquisition Proposal, or (viii) resolve or agree to do any of the foregoing (any act described in clauses (iii), (iv), (v), (vi) and (viii) (to the extent related to the foregoing clauses (iii), (iv), (v) and (vi)) above, a "Change of Recommendation"). The Company shall, and shall cause the Company Subsidiaries and its and their respective directors, officers, employees and other Representatives (including the Company Manager) to, immediately cease any and all existing discussions or negotiations with any parties (or provision of any non-public information to any parties) conducted heretofore with respect to any Acquisition Proposal or potential Acquisition Proposal. Promptly after the date hereof, the Company shall request that each Person that has heretofore executed a confidentiality agreement relating to an Acquisition Proposal or a potential Acquisition Proposal promptly destroy or return to the Company all non-public information relating to such Acquisition Proposal or to the Company or its businesses or assets heretofore furnished by the Company or any of its Representatives to such Person or group or any of its representatives in accordance with the terms of such confidentiality agreement. For purposes of this Section 6.3, the term "Person" means any Person or "group," as defined in Section 13(d) of the Exchange Act, other than, with respect to the Company, Parent or any Parent Subsidiaries or any of their Representatives.

48. Further, the Company must promptly advise Annaly of any proposals or inquiries received from other parties, including, *inter alia*, the material terms and conditions of the proposal and the identity of the party making the proposal. Section 6.3(c) of the Merger Agreement states:

> (c) The Company shall promptly (and in any event within twenty-four (24) hours) notify Parent after receipt of any Acquisition Proposal, any proposals or inquiries

that would reasonably be expected to lead to an Acquisition Proposal, or any inquiry or request for non-public information relating to the Company or any Company Subsidiary by any Person who has made or would reasonably be expected to make any Acquisition Proposal. Such notice shall indicate the identity of the Person making the Acquisition Proposal, inquiry or request, and the material terms and conditions of any such proposal or offer or the nature of the information requested pursuant to such inquiry or request, including copies of all written requests, proposals, correspondence or offers, including proposed agreements received by the Company. The Company shall keep Parent reasonably informed on a prompt and timely basis of the status and material terms (including any amendments or proposed amendments to such material terms) of any such Acquisition Proposal or potential Acquisition Proposal and keep Parent reasonably informed on a prompt and timely basis as to the nature of any information requested of the Company with respect thereto and provide to Parent copies of all written materials received or sent by the Company related thereto. The Company shall promptly provide to Parent any material non-public information concerning the Company provided to any other Person in connection with any Acquisition Proposal that was not previously provided to Parent. Without limiting the foregoing, the Company shall promptly (and in any event within twenty-four (24) hours after such determination) inform Parent in writing if the Company determines to begin providing information or to engage in discussions or negotiations concerning an Acquisition Proposal pursuant to Section 6.3(b). Unless this Agreement has been validly terminated pursuant to Section 9.1, the Company shall not take any action to exempt any Person (other than Parent and Purchaser) from the restrictions on "business combinations" contained in any applicable Takeover Statute or, with respect to any Person who has made or is considering making an Acquisition Proposal, stock ownership limitations contained in the Company Governing Documents or otherwise cause such restrictions or limitations not to apply.

49. Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants Annaly a "matching right" with respect to any "Superior Proposal" made to the Company. Section 6.3 of the Merger Agreement provides, in relevant part:

(d) Notwithstanding anything in this Section 6.3 to the contrary, but subject to Section 6.3(e), at any time prior to the Acceptance Time, the Company Board of Directors may (i) make a Change of Recommendation in response to an Intervening Event if the Company Board of Directors, upon the recommendation of the Company Special Committee, has determined in good faith after consultation with the Company's outside financial advisors and outside legal

11

counsel, that failure to take such action would be inconsistent with the directors' fiduciary duties under applicable Law, or (ii) make a Change of Recommendation and cause the Company to terminate this Agreement pursuant to and in accordance with Section 9.1(g) in order to enter into a definitive agreement providing for an unsolicited Acquisition Proposal, which the Company Board of Directors determined in good faith after consultation with the Company's outside legal and financial advisors is a Superior Proposal, but only if the Company Board of Directors has determined, upon the recommendation of the Company Special Committee, in good faith after consultation with the Company's outside financial advisors and outside legal counsel, that failure to take such action would be inconsistent with the directors' fiduciary duties under applicable Law. . . .

(e) Prior to the Company taking any action permitted (i) under Section 6.3(d)(i), the Company shall provide Parent with three (3) business days' prior written notice advising Parent it intends to effect a Change of Recommendation and specifying, in reasonable detail, the reasons therefor, and during such three (3) business day period, the Company shall cause its Representatives (including its executive officers) to negotiate in good faith (to the extent Parent desires to negotiate (and if Parent does negotiate, Parent shall cause its Representatives (including its executive officers) to negotiate in good faith)) any proposal by Parent to amend the terms and conditions of this Agreement in a manner that would obviate the need to effect a Change of Recommendation and at the end of such three (3) business day period the Company Board of Directors again makes the determination under Section 6.3(d)(i) (after in good faith taking into account any amendments proposed by Parent), or (ii) under Section 6.3(d)(ii), the Company shall provide Parent with three (3) business days' prior written notice advising Parent that the Company Board of Directors intends to take such action and specifying the material terms and conditions of the Acquisition Proposal, and during such three (3) business day period, the Company shall cause its Representatives (including its executive officers) to negotiate in good faith (to the extent Parent desires to negotiate) any proposal by Parent to amend the terms and conditions of this Agreement such that such Acquisition Proposal would no longer constitute a Superior Proposal and at the end of such three (3) business day period the Company Board of Directors again makes the determination under Section 6.3(d)(ii) (after in good faith taking into account the amendments proposed by Parent). With respect to Section 6.3(e)(ii), if there are any material amendments, revisions or changes to the terms of any such Superior Proposal (including any revision to the amount, form or mix of consideration the Company's stockholders would receive as a result of the Superior Proposal, whether or not material), the Company shall notify Parent of each such amendment, revision or change in compliance with Section 6.3(c) and the applicable three (3) business day period shall be extended until at least two (2) business days after the time that Parent receives notification from the Company of each such amendment, revision or change and the Company Board of Directors shall not make a Change of Recommendation prior to the end of any such period as so extended in accordance with the terms of this Section 6.3(e).

50. Further, Section 9.2 of the Merger Agreement contains a provision for a "termination fee" of $44,948,637 payable by the Company to Annaly if the Individual Defendants cause the Company to terminate the Merger Agreement.

51. Certain of the Company's directors and officers stand to receive significant benefits as a result of the Proposed Transaction.

52. For example, Annaly entered into consulting agreements with each of M. Hough, B. Hough, Steele, and Boos providing for monthly consulting fees in the amount of $250,000, $234,000, $105,500, and $73,500, respectively.

53. In connection with the execution of the Merger Agreement, Hatteras and the External Manager entered into an amendment to the Management Agreement, to which Annaly is a third-party beneficiary, which provides that at the effective time of the merger, the Management Agreement will terminate, and Hatteras will pay the External Manager a termination fee of $45,411,000. Hatteras' executive officers, including Individual Defendants M. Hough and B. Hough, own all of the equity interest in the External Manager. Accordingly, these executives stand to receive substantial payments in connection with the termination of the Management Agreement.

54. Moreover, the Company's officers and directors stand to receive millions of dollars as a result of the Hatteras restricted stock awards they hold. As of May 5, 2016, the value of the unvested restricted stock awards held by the Hatteras executive officers is $9,798,186, and as of May 4, 2016, the value of the unvested restricted stock awards held by the Hatteras non-executive directors is $974,466.

*Materially Incomplete Solicitation Statement*

55. Defendants filed the Solicitation Statement with the SEC in connection with the Proposed Transaction. As discussed below and elsewhere herein, the Solicitation Statement omits material information that must be disclosed to Hatteras's stockholders to enable them to render an informed decision with respect to the Proposed Transaction.

56. The Solicitation Statement omits material information with respect to the process and events leading up to the Proposed Transaction, as well as the opinions and analyses of Goldman Sachs. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

57. For example, with respect to Hatteras's financial projections, the Solicitation Statement only discloses total interest income, net income, and core earnings per share for years 2016 through 2017. The Solicitation Statement fails to disclose the remaining financial projection line items for Hatteras, including, but not limited to, dividends per share and tangible book value per share.

58. With respect to Goldman Sachs' *Selected Companies Analysis*, the Solicitation Statement fails to disclose the individual multiples for each of the selected companies observed by Goldman Sachs in its analysis.

59. With respect to Goldman Sachs' *Selected Precedent Transactions Analysis*, the Solicitation Statement fails to disclose the multiples for each of the selected transactions observed by Goldman Sachs in its analysis.

60. With respect to Goldman Sachs' *Illustrative Discounted Dividend Analyses*, the Solicitation Statement fails to disclose the underlying inputs and assumptions for the cost of equity.

61. The Solicitation Statement fails to disclose the amounts Individual Defendants M. Hough and B. Hough, as well as executives Steele and Boos, stand to receive in connection with the termination of the Management Agreement with the External Manager.

62. The Solicitation Statement also fails to disclose whether the non-disclosure agreements entered into by Hatteras with Company A and Annaly contained standstill and/or don't ask, don't waive provisions.

## COUNT I

**(Claim for Violation of Section 14(e) of the 1934 Act Against Defendants)**

63. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64. Section 14(e) of the 1934 Act states, in relevant part, that:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

65. Defendants disseminated the misleading Solicitation Statement, which contained statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading.

66. The Solicitation Statement was prepared, reviewed, and/or disseminated by Defendants.

67. The Solicitation Statement misrepresented and/or omitted material facts in connection with the Proposed Transaction as set forth above.

68. By virtue of their positions within the Company and/or roles in the process and the preparation of the Solicitation Statement, Defendants were aware of this information and their duty to disclose this information in the Solicitation Statement.

69.     The omissions and misleading statements in the Solicitation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Solicitation Statement and in other information reasonably available to shareholders.

70.     Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Solicitation Statement, causing statements therein to be materially incomplete and misleading.

71.     By reason of the foregoing, Defendants violated Section 14(e) of the 1934 Act.

72.     Because of the false and misleading statements in the Solicitation Statement, Plaintiff and the Class are threatened with irreparable harm.

73.     Plaintiff and the Class have no adequate remedy at law.

## COUNT II

**(Claim for Violation of 14(d) of the 1934 Act Against Defendants)**

74.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

75.     Section 14(d)(4) of the 1934 Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

76.     Rule 14d-9(d) states, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

16

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

77. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

78. Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and thus misleading.

79. The omissions in the Solicitation Statement are material to Plaintiff and the Class, and they will be deprived of their entitlement to make a fully informed decision with respect to the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

80. Plaintiff and the Class have no adequate remedy at law.

## COUNT III

### (Claim for Violation of Section 20(a) of the 1934 Act Against the Individual Defendants and Annaly)

81. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

82. The Individual Defendants and Annaly acted as controlling persons of Hatteras within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Hatteras and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did

17

influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

83. Each of the Individual Defendants and Annaly was provided with or had unlimited access to copies of the Solicitation Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

84. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Solicitation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly connected with and involved in the making of the Solicitation Statement.

85. Annaly also had direct supervisory control over the composition of the Solicitation Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Solicitation Statement.

86. By virtue of the foregoing, the Individual Defendants and Annaly violated Section 20(a) of the 1934 Act.

87. As set forth above, the Individual Defendants and Annaly had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the 1934 Act.

18

Case 1:16-cv-00533-WO-JLW Document 1 Filed 05/26/16 Page 18 of 20

88. As a direct and proximate result of Defendants' conduct, Plaintiff and the Class are threatened with irreparable harm.

89. Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A. Enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to file a Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that Defendants violated Sections 14(e), 14(d), and 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: May 26, 2016                                  **RABON LAW FIRM, PLLC**

                                                     By:  */s/ Gary W. Jackson*
                                                          Gary W. Jackson
**OF COUNSEL:**                                           225 E. Worthington Avenue,
                                                          Suite 200
**RIGRODSKY & LONG, P.A.**                                Charlotte, NC 28203
Seth D. Rigrodsky                                         (704) 377-6680
Brian D. Long
Gina M. Serra                                        *Attorneys for Plaintiff*
Jeremy J. Riley
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310

**RYAN & MANISKAS, LLP**
Katharine M. Ryan
Richard A. Maniskas
995 Old Eagle School Road, Suite 311
Wayne, PA 19087
(484) 588-5516

20